Okay. Welcome. We are now ready for the last argued case of this morning. And we'll hear 17-50226, Carley v. Crest Pumping. We'll hear from Ms. Anderson for Crest Pumping. Good morning. May it please the Court, Jennifer Anderson for Crest Pumping Technologies. We're before the Court with several significant issues that arise from the trial and the denial of Crest post-trial motions in an FLSA 213B overtime exemption case brought by Carley and Brown, former highly compensated employees. While the primary issue that I would like to address today is the Court's denial of the JMOL and the legal insufficiency of the evidence to support the jury's verdict, this case also involves a number of legal errors that arise out of the interpretation and application of the Technical Corrections Act, the TCA. And in light of the Supreme Court's decision yesterday afternoon in yet another— I was going to say, since we asked you to be ready, nothing like getting in letter the afternoon before the argument. But given that it was the same day the decision, I think we were pretty prompt. So tell us how that case affects this one, if at all. So it also was another FLSA 213B exemption case. And I'm calling it Encino II because it had been up in front of the Court once previously. But of, I think, significance to this Court and what will change the way that this Court, I think, analyzes the FLSA and the exemption at issue in this case and future cases is that the Court spoke extensively on statutory interpretation. And in particular, I think the one overarching principle is that the majority rejected the longstanding position that the FLSA should be— FLSA exemptions should be narrowly construed against the employer and in favor of the employee. And as long as I've been practicing law and I've been doing wage and hour law a long time, I've never heard of any other way to construe an exemption under the FLSA. So I think this is really a sea change. And that will impact this case because when the district judge denied the JMOL, one of the principles that he cited to guide his analysis of the FLSA is that it is a remedial statute and it is to be broadly construed and liberally construed. That also appears in the Appellee's Brief. However, the Supreme Court said, expressly rejected the notion of interpretation that a remedial statute should be broadly and liberally construed with the question that really what statute is not remedial. So the Court has been directed by the Supreme Court to give a fair reading of the FLSA and the exemptions at issue. That, I think, is maybe the broadest takeaway principle from— But since this is an exception to exemption, does it matter about the fair versus narrow? No, I don't think that it does. I think this is actually a coverage provision. And I think you go back to the TCA was actually not codified within the statute itself. It was added to the notes. But I think it is very significant where it was placed. It was placed under 207, which is the overtime coverage provision. It wasn't placed under 213B as an exception to an exemption. It actually is a coverage provision. So I think you go back to we are not going to interpret this broadly or liberally as a remedial statute. We're going to give that a fair and plain reading as well. And that's your argument for why the burden is on the plaintiff as well. That is part of the argument for why the burden is on the plaintiff. But I think that is the most important reasoning behind our argument. But the other reason that Encino II is very important in this case is that, and I'm sure you noticed this in reviewing the Apolis brief, that they give a textual analysis of the TCA and even citing, of course, reading law, and use the ordinary meaning principle, and then talk about contextual clues. And I think that what Encino did is it shows the flaws in that part of the analysis for looking at the TCA. And here are a couple of other points out of reading law that are important. The Supreme Court in the Encino case gave an ordinary meaning to salesman under the other exemption because there was no other explanation or definition given in the 213B exemption at issue. That is contrasted with the 213B-1 exemption at issue here, where Congress expressly said that the Motor Carrier Act exemption is to apply, according to the power of the Secretary of Transportation to regulate motor vehicles, or motor carriers, I should say, under the Motor Carrier Act, and it expressly referenced the statutory provision of that act. So there's context here. It's not a term kind of floating in isolation within the statute. Garner and Scalia say, words are to be understood according to their ordinary, everyday meaning unless the context indicates they bear a technical sense. And here we have a term in the TCA, I think in the Appley's brief, it's referred to as they refer to it as vehicle weighing, but the actual language is motor vehicle weighing. That term motor vehicle comes from the Motor Carrier Act, and it is technically defined and it is used in a technical sense. So departing in interpreting the TCA, which, again, is only one of the issues in the case, that goes to whether the court, the district court, properly used gross vehicle weight rating versus weight. Let me ask you this. If we were to conclude that you're correct, that the burden of proving that it weighed less than 10,000 pounds is on the plaintiff, is there any evidence that it did weigh less, that these guys operated vehicles that weighed less than 10,000 pounds, using your definition of weight? Using my definition of weight, gross vehicle weight rating? No. And that is the main argument that we make in the case. We have a jury verdict here that is not a verdict that was arrived at by weighing conflicting evidence. We have a jury verdict that is contrary to all of the evidence. The only evidence of GVWR introduced in the case was introduced by the company, and it was consistent that all of the Ford Super Duty F350s that were assigned to and driven by the supervisors in this case was more than 10,000 pounds. Could you say the record stands for the opposite proposition, that if you were to win as to burden, would there be any evidence in the record, if we choose that the weight doesn't mean vehicle weight plus payload, is there any evidence that contradicts the title exhibit showing that those were less than 10,000? So if you win as to burden, but we conclude the plain language doesn't talk about payload added to vehicle, it's just the vehicle. Right. So are you asking that in that case would they win because they showed that the weight was less than 10,000? Would there be anything you would say would be disputable to go to trial? Is there a material issue of fact to trial? Well, I would say that. If they were to bear the burden and you adopted their measurement of weight, the problem is that, and there's actually a miscite in their brief on this, they claim that Mr. Crombie testified that the vehicles assigned to the plaintiffs actually weighed less than 10,000 pounds. That was not his testimony. If you go to that point in the transcript, he testified that from the factory it does, but there was extensive testimony about the customization of these vehicles that must occur in order for them to. But the titles for the vehicles are in the record, and they list the manufacturer weight of the vehicle. They list the factory weight, and then they also list the gross weight, but neither one of them show gross vehicle weight rating. Right. My point is, is it just as indisputable either way, that the gross vehicle weight is 11,000, they can't contest it, but if we say the plain language requires vehicle not plus passenger, not plus payload and cargo, then you wouldn't dispute it because the title shows it was 7,600. I would say in the record the registration shows that, but there's also testimony that these vehicles, and this I think they've been less clear on, what they would argue the standard would be, there's testimony that these vehicles had a significant amount of customization on them. You're saying they could have added stuff that would add weight, but they don't know what that was. There was also testimony from Brian Besselar about how much those things, the headache racks, the grill guards, all of the steel plate in the bed. So I don't think the record is that clear on that. If you look solely at the registrations and the titles, in isolation you're going to get a weight figure, and then you're going to get a gross weight figure, which is not gross vehicle weight. So why would, if Congress knows how to put GVWR elsewhere and they don't here, and each number is equally ascertainable, no one has better proof because it's driver's door or manual, why would we put in payload and cargo, a safety weight determination as opposed to the actual weight? Because they didn't need to. The TCA was enacted solely to correct or clarify the prior changes that had been made to the Motor Carrier Act and the definition of motor vehicle. So Congress doesn't need to, every time it's amending a statute that is well established and clear that you use the gross vehicle weight rating, according to the Secretary of Transportation Standards, to determine vehicle weight. They don't need to go in and say that again. The key term in the TCA is motor vehicle weight, not vehicle weight, but motor vehicle weight, and motor vehicle has a technical term meaning under the MCA. So there was absolutely no need for them to go in and say gross vehicle weight rating. In fact, they don't even do that in the Motor Carrier Act itself. I wanted to back up to the earlier point so I'm sure I'm clear on that. We know what it weighed coming out of the factory, but we do not know, even if we just ignore GVWR, we don't know what it weighed at the time they drove it, you know, like stepping on the scale without your shoes. We don't know what the stepping on the scale without your shoes weight was because there's no evidence of that. So if it was their burden, then we have a void record. And when you have a burden and you fail to put on evidence, then that's a reverse and render. That's basic. I'm just making sure that we all understand that. That is correct. So the way that they win is either that they don't have the burden, and we can talk about that, or they have the burden and it's the factory coming out of the factory and stepping on the scale weight. Correct, which is not a weight that the Secretary of Transportation has ever used or is in the regulations. I mean, they talk about motor vehicles, commercial motor vehicles, and the weight is defined and has consistently been used both for MCA purposes and for Motor Carrier Act exemption purposes as the greater of either the GVWR or the GVW, or when you're combining it with the trailer, the combined. And what's your position on the amount of deference that we should give to the interpretation? Well, actually, I think that's a great question, and whether it's Skidmore or whether it's Chevron and the Bulletin, I think that the Department of Labor gave deference to Congress because Congress, in enacting the TCA, was correcting and clarifying its prior pronouncements in the MCA. The FLSA's exemption expressly refers you back to the text of the MCA. So really, I think you should defer to it, but I don't even know that it needs that sort of deference because of the textual analysis that you follow. Both issues have divided district courts in recent years. They have. Are either of these issues pending in any other circuit at the moment? I could not honestly tell you they're not. I got a Westlaw alert this morning from a case in Missouri that had just come down, so it probably is pending somewhere else. And I should look at my own docket before I answer that question. Which to you is the harder of the two issues? Burden of proof or weight? I think the burden of proof issue is a little harder. I think there is a lot of textual history. I think context and I think interpretation all support use of gross vehicle weight rating. Think of it this way. If you use the term... Say that again. I think that the textual analysis, the textual history, and I think that there's a lot of case law that obviously defers to gross vehicle weight rating. But here I think is sort of the, this goes to the absurdity principle of interpreting text. If you were to use, there is no question, you have to use gross vehicle weight rating in order to determine the weight of a commercial motor vehicle, both for Motor Carrier Act purposes and Motor Carrier Act exemption purposes under the FLSA. But if you then go to a weight standard for purposes of the TCA coverage provision, you could have a vehicle that has a weight that is less than 10,000 pounds but a gross vehicle weight rating that is more than 10,000 pounds. I mean, you're creating, there's no harmony of interpretation. You're picking apart pieces of a consistent statutory text in order to come up with different standards that aren't going to work either from a judicial standpoint or from a compliance standpoint for an employer trying to apply the law. So... Do you want to talk about the highly compensated employee? Sure. Well, really, yeah, I mean, I think we're sort of beyond, you understand what the evidence is in the record of GBWR. With respect to highly compensated employee exemption, there are really only a couple of points. I think the issue on waiver is really a non-issue. It's a little bit peculiar, and we've cited to all of the points in the record. I don't think there's any sort of hyper-technical requirement that you mention specific words and regulatory definitions in order to preserve the argument. We argued duties on management, argued duties on directing work of two or more people, and then also argued duties on recommending people for advancement, promotion, hiring, et cetera. With respect to the compensation, these individuals made far more than $100,000 a year each on an annualized basis. With respect to the bonuses being included, I think the definition of non-discretionary has been sort of misunderstood or discretionary. If a bonus was designed to induce somebody to produce better-quality work, then that, by definition under the DOL, is a non-discretionary bonus. It doesn't matter that someone might have to make that decision and use some subjective analysis in determining whether someone did a good job or did a bad job. That doesn't make it somehow discretionary. It's still non-discretionary. It's a performance-based bonus. Okay. So I see I'm out, and I'm going to reserve. Talk fast, and you reserve time. Good morning, Your Honors. Adam Hansen on behalf of Appellees Scott Carley and Brandon Brown. With me today are Trial Counsel Jeremy Young and Colin Wynn, and may it please the Court. The District Court's judgment should be affirmed because there was ample evidence in the record for the jury to conclude that Crest failed to substantiate either of its defenses, and further, the District Court did not commit any reversible legal errors with respect to jury instructions or evidentiary rulings. I'd like to start with the Motor Carrier Act exemption, bracket to the side just for a brief moment, the legal disputes, and talk about the sufficiency of the evidence. Then I'll proceed to the legal disputes. If there is any time remaining or questions, I'll certainly address the highly compensated exemption at the end of my presentation. With respect to the sufficiency of the evidence, even without the legal disputes, there's no question that there was sufficient evidence in the record here for the jury to conclude that these vehicles weighed less than 10,000 pounds, however that weight is defined. Tell me the evidence that the GVWR was under 10,000 pounds. The title and registration records are the most compelling evidence. This defendant told the state of Texas that these vehicles weigh 7,600 pounds empty and 9,600 pounds loaded to capacity, maximum capacity, gross vehicle weight rating. The jury is entitled to believe what Crest told the state of Texas. He said the 9,000 was a gross vehicle weight rating? Gross vehicle weight rating. So he said that was the safety max. He was later corrected to have said that that was just customized loaded. Am I wrong? I think that's not a correct reflection of the record. If you look at the title and vehicle registration records... Where do we need to look? Tell us the record site where we need to look. Let's see here. All right, so it's record on appeal, 3,060 through 65, 3,067, and then 3,493 through 96. But it's principally the documents. I'm not sure which of those refer directly to the documents, but these are two documents, the title document and the registration document, which specifically tells the state of Texas both the empty weight and the gross vehicle weight rating. But certainly that's not the only evidence. I think the second most important piece of evidence... I'm sorry. Those documents will show the GVWR was less than 10,000. Correct. Okay. Correct. And the second most important piece of evidence, frankly, is the evidence that these drivers who drove these pickup trucks did not comply with the myriad regulatory requirements that are imposed under the transportation statutes for driving these cars. So as one example... If they weigh more than 10,000 pounds, the fact that they don't comply with the regulations for vehicles weighing more than 10,000 pounds doesn't affect the exemption. It just might subject them to some kind of regulatory penalty. Well, sure.  There's two inferences, right? Inference number one is these vehicles are, in fact, over 10,000 pounds, but they're just out of compliance and there's some sort of regulatory penalty. But the other inference is that the vehicles are less than 10,000 pounds, and of course the jury is allowed to draw from that. I mean, I guess I'm just having trouble with... This just seems like a very weird way to decide weight. I mean, granted, I might not want to step on a scale, but I don't have to guess what my weight is. I can... Once I step on it, we know the weight. So I realize these are trucks, they don't step on a scale, but, I mean, still, it seems like a funny way... state of mind and this sort of thing, but this should be something you can look up. And it just strikes me as weird that y'all are saying, well, we didn't see the door and we don't know about that. I mean, what did y'all do in discovery to find out what these things weighed? It just is a weird case to me why we're kind of even wondering what they weigh. I understand the legal question of GVWR versus factory versus factory plus add-ons, but once you figure that out, why isn't the weight what it is? Well, there, frankly, were some discovery shenanigans in this case. It's in the record in our briefing, but this business of the door jam of the car and this business of, well, we called Ford and this is what they told us, none of this was produced in discovery. There were objections raised by trial counsel that none of this should even be admissible. The...David Crommey, the CEO of Crest at the time, testified that he did all this the week before trial. So this was very much discovery and trial happening at the same time. So I think that's the answer to the evidentiary question. But going to the broader question about weight, my short answer is take it up with Congress. Would it have been simpler if Congress had kept the old regime and said, OK, gross vehicle weight rating is going to be the measure. When you hit this number, the FLSA kicks off, the Motor Carrier Act kicks on. That's exactly what the law was from 2005 to 2008. That was the law. Congress changed the law and eliminated a textual regime that said either gross vehicle weight rating or gross vehicle weight and replaced it with vehicles weighing. And to your counsel's point about that being a technical definition, well, the Motor Carrier Act and transportation statutes generally are extremely technical, but they're also extremely explicit. There are lots of ways you could specifically define that term, as it was done between 2005 and 2008, and just say this is exactly what we mean. There's really no basis to say the word weighing means something more than its ordinary meaning in this context. And with respect to, and this goes to the first of the three legal disputes about the term weight, and I should add as a side point that, of course, it's not necessary for this court to reach the legal issue of how to properly weigh if the court affirms the district court in other respects. But since we're discussing it, there's no administrative difficulty. The best definition of weighing is the unloaded weight of the vehicle. Gross vehicle weight means sort of vehicle plus cargo and gear and other items that are loaded in it. Gross vehicle weight rating is really the maximum rated capacity of that vehicle. On issues divided district courts, do you know of any circuit that presently is considering this? I don't. I also have a Westlaw alert. What's the most thorough discussion in any of the district courts in your mind? I think it's the Idaho decision. I'm going to think the, make sure I have the. And that goes to this is not a technical term. The plain meaning of weigh is what the item itself weighs without any cargo passengers. Yep, that's right. And most of the Idaho decision, Your Honor, is spent discussing. It's been, I don't have it in front of me here, but it's in the brief. It's been discussing the principles of administrative deference. Is it Garcia? It's Garcia. Yes, it's Garcia. And on that question of administrative deference, there's just no, there's no basis. With respect to the DOL, it got a lot right on this question. It just didn't get this piece right. And if you look at the DOL's guidance, it just says we're going to continue using gross vehicle weight rating. There's no reasoning. There's no justification. Do you agree that each, in theory, should be as easily ascertainable as the other? Each? Each of the two weights. I don't, I think maybe only one court has adopted this customized weight. It seems like the big divide is between the safety max weight and the curb or empty weight. Right. And that is just as easily ascertainable because the measure that would present the most difficult administrative compliance issues would be gross weight. That literally changes by the day depending on what's in the truck. But this unloaded empty weight or curb weight, the interpretation that we're advocating, very straightforward. You weigh the vehicle once. It's also straightforward to say, you know, sometimes you get on an elevator and it says maximum weight, 1,500 pounds or whatever, and you're looking around kind of thinking, did I eat too much for lunch or whatever to get on this elevator? And so there is such a thing, and that's what the GBWR is, right, the maximum weight that the truck could hold and be. So that's also ascertainable, as is this factory weight before you add on the steel whatever. I think they're equally ascertainable. But the ultimate point is you can't just say, I mean, the courts that have gone their direction on weight, they've only relied on two justifications. One is deference, and the second is, well, this is just easier. This is simpler. And none have said the point that she emphasized today, which is, well, it's been defined as a technical term in the statute, and this is just a cross reference to that. To my knowledge, no. I mean, certainly there's no support that it's any sort of a cross reference. And there's no, frankly, I don't think much support that, you know, when Congress specifically says gross vehicle weight rating and then changes it to vehicle weighing, that that really means the exact same thing of the language that they struck. So, no, I'm not aware of a court adopting that. What the courts have sort of said is, well, it's just easier to harmonize these two statutory schemes. Again, what we said in our brief, that's a laudable goal, but it's just not a permissible one given the language. Let me ask you something, just like the law school exam hypo, and be sure that I'm not missing something. Forget this case for now. Let's just say, typical case, you're the plaintiff, you have the burden of proof on point X, and you put on zero evidence of point X, but you win anyway, and it comes to us. We would reverse and render. Yes. Okay. All right. Your argument is you didn't have the burden of proof, but if you did, the evidence of weight, if we accept the GVWR as this inference thing, the inference about them complying with regulations, or what evidence do you have of the GVWR being under 10,000 pounds if we find you have the burden and GVWR is the right weight? If you find that we have the burden and GVW is the right weight, it's principally the title and registration documents. It's principally the title and registration documents. This is what, and I don't want to belabor the point, but this is what Crest told the State of Texas these vehicles weigh, both curb weight and gross vehicle weight rating. So the evidence, it wouldn't be a reverse and render in our direction under that hypothetical scenario that you've laid out, but there's certainly sufficient evidence for the jury to rule. It would be an affirm, is what you're saying. It would be an affirm, correct. Okay. Right. Right. If I may, I'd like to move on to the burden of proof. There are no hard and fast rules as we laid out in our brief about the burden of proof, but there are important background principles at play here. The first is, you know, we've got a statute that's 80 years old here with the overtime requirements and various exemptions, and since the beginning everyone has agreed, I know better than to say, no court has held in the last 80 years, but I'm certainly not aware of one, that the plaintiff's burden is to establish a default, and that default is this employer, first of all, that they're employed by an employer, and secondly, that that employer is broadly covered by the Fair Labor Standards Act, and thirdly, that that employee worked more than 40 hours a week in a given work week. That's common to all plaintiffs across all categories across the entire labor market in the Fair Labor Standards Act. That's the plaintiff's prima facie case. The burden is then shifted to the employer to prove that one or more exemptions from overtime applies, and as we point out in our brief, many, many exemptions, and certainly not all exemptions are located in Section 213. Many, many exemptions, these are complex. They have exceptions to exceptions. They have provisos. They have, you know, limiting factors, and so this notion that there should be essentially a burden-shifting regime is unsupported, in my knowledge, in any case law interpreting the Fair Labor Standards Act. I realize this is not a particularly good analogy, but it keeps coming to mind, so I'm going to throw it out there for you, and that is insurance policies. So the insured has the original burden approving coverage under the policy. Then the insurance company comes in and approves an exemption. Then the insured comes in and approves an exception to the exemption. Why does not that general scheme make sense here? The general scheme doesn't make sense here because the whole question of whether the particular activities that these employees are engaged in excludes that subclass of employees from the coverage of the act is all part of the exemption. I mean, if you take a step back here and you just take a real-world look at this, this isn't about, well, you know, we're just adding this special component to plaintiff's prima facie case. This is all about the scope of the Motor Carrier Act exemption, and that's the most logical way to look at it. So certainly, I mean, insurance is one example. Title VII, I practice employment law, that's another example where there are burden-shifting regimes. HRSA has burden-shifting regimes. I guess my point is there's no support for that or sort of real-world reason for that in the Fair Labor Standards Act. Okay, so now let's get to Encino II, as your opponent called it, which seems to be a bit of a paradigm shift in this notion that, well, we're just going to construe everything in favor of the employee here. And so how does that impact? You're saying, well, we've never really done this burden-shifting scheme in FLSA. You just come and go, I'm employed, I work more than 40 hours, have a nice day, and let the employer, you know, run around defending itself. Well, I realize Encino didn't directly address that point. Doesn't it suggest that, no, we aren't just going to construe everything in favor of the employee? We're going to look at this and give it its fair rating, whatever that may be. I appreciated the court's ECF notice. I did do some work on Encino, so it was a little bit of salt in the wound. But, you know, I won't suggest that it's not important, that the last paragraph in the majority opinion in Encino isn't important because it really applies across the whole labor market and the whole FLSA. That said, it doesn't change anything in this case. There's no, you know, frankly, we don't need a thumb on the scale in any of these interpretive questions. You can go to our brief and sort of draw a red line through the three paragraphs that talk about the narrow construction canon, and you'll notice there are plenty of other arguments based on plain language and context. But, Judge Haynes, I think you already made the most important point that I would make, which is Encino didn't touch the foundational rule about employers bearing the burden of proof on exemptions. And I don't think there's any suggestion that that would change in any way. That's, you know, I guess the Supreme Court overruled itself yesterday, so anything is possible. But the notion that employers bear the burden of proof on exemptions is drawn from an entirely different body of case law under the FLSA. It's much more robust. And it's interesting. This is always true. Lawyers have a different way of categorizing things. So you're categorizing this as just one big exemption question. Your opponent is categorizing this as a coverage question and therefore putting it back in the original bucket of the prima facie case. And another way of categorizing it, as some have, is an exception to an exemption. So I understand if it's just a big exemption discussion, then the burden doesn't ever shift or whatever. But if we were to treat it as an exception to an exemption, just assume arguendo that we did that, what would be your argument that you don't bear the burden on that if we treated it that way? The principal argument, and this is cited in our brief, is there are numerous FLSA exemptions that have exceptions to them. And to my knowledge, no court has ever introduced a burden-shifting regime. And this just goes back to this idea that plaintiffs in the Fair Labor Standards Act have to prove a default. They have to prove essentially that the employer is now in 2018 under this broad umbrella of enterprise coverage and that they are employed and that they worked 40 hours. And that's just the same across every case. And if you have to show, well, this person's a doctor or this person's a lawyer or an administrator or one of these numerous categories of exempt employees, that's the employer doing it. And the last point that I want to raise on this topic is it also goes to the employer's access to proof. From a very practical perspective, Judge Haynes, it's employers who make exemption classifications decisions. It's employers who sit in a room with an organizational chart and say, are we paying overtime to these guys, are we not paying overtime to these guys based on their duty? And that doesn't change with what Congress did in 2008. And so rather than an employee saying, well, I worked more than 40 hours, I'm entitled to overtime, it's very much employers still sitting in a room saying, these guys are working on light-duty vehicles and are otherwise covered by the Motor Carrier Act, we're going to pay them overtime, but these employees are working on 18-wheel trucks, we're not going to pay them overtime. And it's the employers who make those decisions and it's the employers who have access to that evidence. If we ruled on your way, would we be splitting with the Eighth Circuit on this question, the McCall case? Yes, yes. There's no other circuit that's spoken to this? To my knowledge, no. Certainly the Fourth Circuit has, well, I don't want to go in that direction because it's not directly on point. So I'm not going to quibble with that. And the Eighth Circuit doesn't have much analysis other than deference, correct? That's right. I see that I have about two minutes left. I'm happy to answer any questions on the Motor Carrier Act exemption, but I'd like to move on to briefly discuss the highly compensated exemption. There are really a number of permutations in terms of routes to affirmance in the highly compensated exemption. The waiver issue in this case is significant. Rule 50A is not going through the motions. It's important for parties to raise all of the sufficiency of the evidence arguments that they want to make at the end of trial. The purpose of doing that is to allow the other party to shore up its proof, allow the judge to evaluate those, so you don't get to, you know, essentially deprive the litigants of that opportunity and attack them later, which is precisely what the defendant here is doing with respect to all but one. The district court found that the only piece of the highly compensated exemption that the defendant objected to at trial was this notion that the plaintiffs supervised the work of two or more subordinate employees. So the waiver is significant, and that subjects really the vast majority of that defense to the plain error review. That being said, the grounds, the alternative merits grounds that the court relied on was that the primary duty of these workers did not involve office or non-manual work, and the evidence there is just overwhelming. The primary duty determination is highly fact-specific. The reason that the statute uses primary duty is specifically to identify the most important foundational thing that the employee performs, and here the evidence was simply overwhelming that these guys were out on the oil fields, climbing up and down ladders, suspended in the air in harnesses, making wellhead connections that only these guys were able to do, and there were other supervisors above them who were really operating in this genuine supervisory role. There are other arguments as well, but I would ask the court to affirm the district court in all respects. Thank you. All right. Ms. Anderson, let's hear your rebuttal. So I'd first like to address this notion that there's some evidence in the title of registration documents that the GVWR is less than 10,000 pounds. I'm looking at them. The title documents list weight, 7,600 pounds. The registration documents list empty weight, 7,600 pounds, same thing as weight, and gross weight, 9,600 pounds. There is no evidence in the record that the gross vehicle weight rating of any of the F-350s is anything less than 11,500 pounds. Second, this is really not before the court, but I do have to note, I don't know what discovery shenanigans are. I do know. Oh, I do. I do know that the only information the other side asked for in discovery was for weight information or information showing that vehicles weighed less than 10,001 pounds. So they didn't ask for information that showed that the vehicles weighed more than 10,000 pounds. I just find it hard to imagine you would go to trial where this is the key issue in the whole case and you haven't done your discovery. I mean, it's just a bizarre finding out the week before trial what the key piece of evidence is in the case with lawyers of this caliber. But that's fine. It is what it is. What do you make of his kind of blob argument on exemptions? This is all wrapped up in exemptions, and the Supreme Court didn't change the notion that exemptions are the duty or the burden on the employer. I mean, if the TCA were an exception to an exemption or part of an exemption, then it would not exist in the notes under Section 207. Section 207 is the overtime coverage provision. It also wouldn't say, in order to be a covered employee entitled to overtime, you must meet these criteria. That's not the exact language that it uses, but it identifies the criteria. You're not even saying it's in the third burden shifting. You're not saying it's an exception to an exemption. You're saying it is part of the original burden. You're kind of disagreeing with his default. I just have to say I'm an employee and I have 40 hours and I'm at the right company. He also has to show the weight. That's a great question. I have, in fact, in other courts, argued that it is really an exception to an exemption. Maybe that's semantics or I'm not being precise. On its face, it defines a covered employee, but it is also something that, and I think this was discussed in the Allen case, not at the Fifth Circuit level, but at the district court level, that it was enacted in response to sort of the narrowing and then expansion of the term commercial motor vehicle or motor vehicle under the MCA. So it has been viewed as sort of a limitation on the exemption, if you will. So I think you can call it an exception to the exemption. And if it is an exception to the exemption, I mean, he's not wanting to go there. He wants it to be part of a blob, and I understand that. But if it is an exception to an exemption, please make the argument why that burden should be on the plaintiff. Well, I think the burden should be on the plaintiff under traditional burden shifting principles, and we briefed that and cited authorities for that. I also don't believe that there is any compelling policy argument that the burden should somehow be on the employer because it has superior access to the evidence. I mean, if you look at the FLSA from a general perspective, the employee has to prove coverage, which involves showing gross revenue of the employer. It involves showing all kinds of things about the employer that the employee wouldn't have any access to other than through discovery. So I don't find that to be a compelling policy argument. Exceptions to exemptions are things the employee would know. What truck did I drive? Was I also wiping floors at the same time that I was leading delegations of something or other? So a lot of these distinctions, even this thing about what the salesman did and the service advisors, I mean, the service advisor guy knows what he did or she did. Whether that qualifies for the exemption or not, they know what they did. Well, that's true, and they are also the ones driving the vehicle. When they are required to weigh them by DOT or other state regulations, and they also are the ones who are given the overweight tickets when they're fined, and to the extent they are driving a commercial motor vehicle, it also affects their license as a driver. I mean, these are regulated drivers if the employer is following the DOT rules. And that's why I think the biggest mistake that could happen is to find that weight is somehow used to determine what a motor vehicle is under the TCA provision when there's already a well-defined body of statutory and regulatory material on that and CASA on that, and where you could end up in a situation where a vehicle is at once a vehicle under the TCA and at the same time a commercial motor vehicle under the MCA. You can have this gap. So I think that doesn't make any sense. I do need to address, I think, this idea, really the court's error in admitting evidence of alleged noncompliance with DOT rules. That's in your brief, and so I'll give you one sentence to wrap up. No, that's fine, and I think this court's addressed that in barefoot. Thank you very much. All right, thank you, counsel. We appreciate your arguments. The case is under submission.